[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the action of the East Hartford Planning and Zoning Commission denying the application of the plaintiff for a special use permit to conduct the operation of an Emergency Homeless Shelter on the parcel of land known as and located at 381-385 Main Street, East Hartford, Connecticut.
The plaintiff is a contract purchaser of the land and is an aggrieved party in this zoning appeal. The plaintiff CT Page 6330 conducts a shelter for the homeless in Meriden, Connecticut. The proposed shelter, similar to the Meriden Shelter, is anticipated to provide shelter for homeless women and children and additionally to provide shelter for homeless men. The State Legislature has appropriated funds to purchase the site. There is no such shelter in East Hartford at present. There appears to be no serious dispute that a shelter of this type is needed in the town of East Hartford.
The proposed facility is allowed as a "Special Permit Use" under the provisions of Section 239.6 of the East Hartford Zoning Regulations "in any zoning district." The conditions for this specific use provide a) that the site be located within 200 feet of a bus stop; b) a certifying of need by the Mayor, Town Council and Director of Social Services; c) sufficient size for an outdoor playground; d) parking space requirements.
Special Permit applications are subject to Regulation Sec. 232, which provides in part: "232.1 Special permits shall be granted only where the Planning and Zoning Commission finds that the proposed use or the proposed extension or alteration of an existing use is in accordance with the public interest, convenience, and welfare. . ." The plaintiff filed with the Commission all of the requisite documents including a "plan of development" as required by Regulation Section 232.2. The Commission held its duly published public hearing on the application on May 12, 1993. The plaintiff made its detailed presentation to the Commission. The Commission expressed some reservation as to whether the plaintiffs had complied with the requirement for twenty-three spaces, as the applicant had provided for only twenty-two spaces. Commissioner Grottole expressed a number of concerns about the application, including concerns about the safety of the play area for children, liability insurance, proximity to an existing Department of Youth Services facility, funding, and the potential for attracting non-resident transient persons from other towns, thereby increasing the intensity of the use of what was conceived to be a local facility.
Surprisingly, only five citizens spoke concerning the application, three opposed and two in favor. Of those, it appears that only one person was a resident of the CT Page 6331 immediate neighborhood. One of the opponents pointed out to the Committee that he shelter was located between two facilities serving alcoholic beverages. In essence the Committee was left with little evidence as to the daily activity of the surrounding community and a paucity of information as to the potential effect of the shelter upon the adjacent neighborhood.
The public hearing was concluded that evening May 12, 1993 11:30 PM. The vote of the Commission was deferred until May 26, 1993. At that time a relatively large and vocal group of citizens attended the meeting, wishing to speak in opposition and carrying placards urging the Commission to reject the application. Some of the citizens were upset at not being able to be heard that evening. The Chairman carefully explain to the public that the hearing was closed and that the Commission could not entertain any additional testimony or presentations at that time. No factual information was advanced by the citizens in attendance. The presence of these citizens added nothing to the hearing and produced no information one way or the other to assist in the difficult task of the Commission in arriving at its decision on this matter.
Commissioner DePietro expressed concern about the choice of location for the proposed facility. Commissioner Grottole, who had voiced concern about the application at the May 12 public hearing, commented that he had wished that there had been more public input at the May 12 hearing. He moved that the application be denied "without prejudice" to "give the taxpayers of the town the opportunity to say what they have to say with regard to this application." That motion was carried unanimously.
The plaintiff St. Vincent De Paul Society of Meriden, Inc. filed this appeal. The defendant East Hartford Planning and Zoning Commission moved to dismiss the appeal on the grounds that the town having granted the application at a subsequent date, November 13, 1993, this appeal was now claimed to be moot. The court denied the motion, as the granting of November 13, 1993 was appealed by one Harold Ahl, which appeal was then pending in this Court. (Case # CV 93-05322028, Harold Ahl v. East Hartford Planning and Zoning Commission). This appeal could not be sustained on the basis of mootness as the granting of the CT Page 6332 application of November 13, 1993 was under appeal by Ahl and could not be considered a conclusive determination so as to call for the application of the principles of mootness.
The court determined to consolidate the cases to avoid the further jeopardy that the potential sustaining of this appeal by proffered stipulation with conditions, or by a hearing, would work to the prejudice of Mr. Ahl, as he would not have been a proper party to this present appeal, the Commission's decision having been consistent with his disfavor of this application as evidenced by his later appeal of the granting of the application in the subsequent proceedings.
The plaintiff sets forth six reasons for appeal. The reasons briefed and/or argued are threefold.
First, that the Commission failed to assign proper reasons for the denial of said application. General Statutes 8-3c provides "Whenever a Commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." Unfortunately this provision appears to be frequently not adhered to by various zoning authorities throughout the county and the state. However, this failure is not fatal, for the Court is required to search the record to determine whether a reasonable basis exists for the action taken.Zeicky v. Town Plan and Zoning Commission, 151 Conn. 265,268 (1963); Parks v. Planning and Zoning Commission,178 Conn. 657, 661, 662 (1979). The failure of the Commission to specifically assign reasons does not in and of itself invalidate the decision of the Commission.
Second, the plaintiff claims that the Commissioner "failed to approve the plaintiff's application which conformed to the Combustion's regulations."
Section 232.1 of the Zoning Regulations states "Special permits shall be granted only where the Planning and Zoning Commission finds that the proposed use . . . is in accord with the public interest, convenience, and welfare after taking into account, where appropriate:" (The Regulation then lists a number of different criteria, including "the nature of the surrounding area and the CT Page 6333 extent to which the proposed use or feature will be in harmony with the surrounding area.")
The plaintiff claims that so long as the application is in technical compliance with the physical requirements of a submitted "plan of development", as required to be submitted per Regulation Sec. 232.2 the Commission has no discretion but to grant the application. The court notes, however, that Regulation Sec. 232.2 provides that the purpose of the "plan of development" is for the purpose ofassisting the Commission to determine whether the "special permit use . . . is not likely to "cause depressed values or have other detrimental effect on properties in the surrounding neighborhood."
The plaintiff cites the cases of Kosinski v. Lawton,177 Conn. 420 (1979) and De Maria v. Enfield Planning andZoning Commission, 159 Conn. 534 (1970). Reliance upon those cases is misplaced. In those cases the Commission did state their reasons for disapproval. The reasons given, to wit "poor use of the site" (Kosinski) and "aesthetically displeasing" (De Maria) were clearly improper reasons as a matter of law. They would have been improper reasons even if the ordinances had set forth those reasons as acceptable reasons. Further, courts may rationally assume that a Commission having set forth its reasons, if there were other reasons a Commission would have set forth those other reasons. In the instant case, no reasons having been set forth by the Commission, the Court must review the record. Zeicky v. Town Plan andZoning Commission, supra.
The record demonstrates, as aforesaid, that a number of items of concern were expressed by at least one of the Commissioners at the May 12 public hearing. Each of those concerns were directed to areas of legitimate concern, as expressed in Regulation Sec. 232.1. Matters such as traffic, parking safety, harmony with the neighborhood, are traditional and legitimate matters of concern in the granting of special permits.
One further matter must be borne in mind. Although Zoning authorities are enabled to take into account their general knowledge and experience as concerns proposed uses, yet the operation of an emergency shelter for the homeless CT Page 6334 is not the type of activity with which the Zoning Commissions are expected to have had much knowledge of, or experience as concerns this type of activity. The common experience which most citizens have with more traditional activities, such as apartment complexes, retail facilities and the like are of little assistance to the Commission in evaluating a facility such as that proposed herein. Hence the Commission must look to outside sources to furnish objective information as to the prospect of the specific proposed use as being by a facility which can exist in harmony with the neighborhood and consistent with the safety of the citizenry and in accord with the maintenance of property values in the neighborhood.
The granting of a special permit is not the same as the establishment of a use which is specifically and automatically permitted as a permitted use in a particular zone. Nor is it the same as the mere requisite of site plan approval for a specifically permitted use. The granting of a special Permit requires the exercise of discretion by the Commission.
In reviewing the record it is obvious that the Commission did not find that the plaintiff had satisfied the Commission, on the basis of the evidence presented, that the plaintiff's application and the evidence was sufficient to allow it to grant the application.
The Connecticut Supreme Court, in the recent caseWhisper Wind Development Corp. v. Planning and ZoningCommission, 229 Conn. 176 (March 1994) affirmed the decision of the Appellate Court in that case of the same name, 32 Conn. App. 515, determining that "in the case of a special permit, zoning regulations may authorize a planning and zoning commission to deny an application on the basis of enumerated general conditions such as public health, safety and welfare." P 177. The Court determines that the plaintiff has failed to sustain its burden that the Commission acted arbitrarily and unreasonably.Morningside Assn. v. Planning and Zoning Board, 162 Conn. 154,157 (1972).
Lastly, the plaintiff assigns as error its claim that the Commission "accepted testimony from the public after it had closed the public hearing." CT Page 6335
The record reveals that at the public hearing was closed as of the end of the public session of May 12, 1993. When the Commission thereafter convened on May 26, 1993 to vote on the application members of the public appeared, bearing "Vote No" type signs and requested to be heard. The Chairman properly informed the citizens that the hearing was closed. No testimony was allowed. These people spontaneously voiced their disappointment at not being allowed to speak. The Court viewed a videotape of the session.
The Chairman was firm. He did not allow testimony. The only spontaneous statements which could be conceivably be considered "evidence" was a phrase "it is a residential area" and "you turned it (?) down three years ago". This added nothing that the Commission did not know as a matter of record, and was merely a way of expressing personal views that these people were opposed to the application.
There is nothing to indicate that any members of the Commission were in the least intimidated by the fact that some members of the public were opposed to the application. The Commission fully understood that this application was not to be determined as a popularity contest. At most it did alert the Commission that there may be additional information available from the public, including the neighbors to form a sound factual basis for the arriving at a realistic decision.
Bearing in mind the sparse objective input, on the basis of experience, from persons other than the applicant, the action of the Commission was realistic and proper. The unanimous vote of the Commission to deny the application "without prejudice" can only be interpreted as meaning that although there was some evidence before the Commission in support of the application the Commission was not satisfied that the evidence was adequate to justify the granting of the application, but that the Commission was prepared to listen to further information to allow the applicant to seek approval at a future time.
There is nothing in the record to indicate that if the motion had not been made to deny without prejudice
that the board would have granted the application, rather than to CT Page 6336 categorically deny the application, i.e. with prejudice. There is nothing to indicate that the Commission was in any fashion intimidated or influenced by the fact of the existence of citizen opposition. This Court cannot reverse the Commission where the record does not justify the plaintiff's contention that the Commission acted unfairly, arbitrarily or illegally. Torsiello v. Zoning Board ofAppeals, 3 Conn. App. 47, 50 (1984).
The further articulated assignments of error — exceeding its statutory powers; failure to approve the application; deprivation of the right to use property — are generalized statements of the arguments set forth in the brief and are determined by the aforesaid decision of this Court.
For the reasons set forth herein the decision of the Planning and Zoning Commission of the Town of East Hartford is affirmed, and accordingly this appeal is dismissed.
L. Paul Sullivan, J.